IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW KLAUSNER,<br><br>      Plaintiff,<br><br>  v.<br><br>LUCAS FILM ENTERTAINMENT COMPANY,<br>LTD. and INDUSTRIAL LIGHT & MAGIC,<br><br>      Defendants.<br>_____/ | No. 09-03502 CW<br><br>ORDER GRANTING<br>DEFENDANTS'<br>MOTION TO DISMISS<br>STATE LAW CLAIMS |

In this employment discrimination lawsuit, Plaintiff Drew Klausner alleges that Defendants Lucas Film Entertainment, Ltd. and Industrial Light and Magic (ILM) violated several state and federal anti-discrimination laws.  Plaintiff alleges that he was terminated from his employment because of age discrimination and that he was retaliated against for taking a leave of absence and complaining about discriminatory treatment.  Defendants move to dismiss Plaintiff's state law claims on the grounds that they are barred by the federal enclave doctrine.  Plaintiff opposes the motion. Having considered all of the papers filed by the parties, the Court grants Defendants' motion.

BACKGROUND

Plaintiff makes the following allegations in his complaint.

In February, 1994, Defendants hired Plaintiff as a digital artist. Plaintiff was thirty-nine years old at the time of his hire. In January, 2005, Plaintiff asked to modify his work schedule, reducing his hours and eliminating overtime hours so that he could better care for his seriously ill daughter. Defendants granted Plaintiff's request but noted his "lack of flexibility with his schedule" in his yearly review. Compl. ¶ 17. From the time he was hired until September, 2005, Plaintiff worked for Defendants in Marin County.

In September, 2005, Plaintiff began working at Defendants' new location in the Presidio in San Francisco. Beginning in January, 2008, Plaintiff's daughter's health situation changed such that he could work full time and work overtime when necessary.

On April 25, 2008, Plaintiff and four other employees were laid off because Defendants did not have enough work to sustain their employment. Plaintiff then filed a grievance through his union and claims with the Equal Employment Opportunity Commission (EEOC) and the United States Department of Labor (DOL) for age discrimination and a violation of the Family Medical Leave Act. In May and June, 2008, Defendants rehired three of the four other employees who were laid off. Plaintiff was rehired in July, 2008. On September 9, 2008, Plaintiff filed a retaliation claim with the Department of Fair Employment and Housing (DFEH) in which he asserted that he was terminated in retaliation for participating in protected activities. On October 27, 2008, Defendants terminated Plaintiff again. At that time, Plaintiff was fifty-three years old.

On July 30, 2009, Plaintiff filed the instant lawsuit, asserting five causes of action under state law and two under federal law. Defendants move to dismiss the state causes of action.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

## DISCUSSION

I. Judicial Notice

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

3

Defendants ask the Court to take judicial notice of the fact that the Presidio is a federal enclave. The Court will not take judicial notice of a legal conclusion. However, the Court will take notice of the fact that Defendant ILM is located on the Presidio because such a fact is capable of accurate and ready determination.

Defendants also request that the Court take judicial notice of the following documents: Plaintiff's discrimination complaints filed with the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing; two court opinions cited by Defendants; and a map of the Presidio issued by the U.S. Department of the Interior, National Park Service. The Court grants Defendants' request to take notice of the existence of the complaints but not of the truth of the matters stated therein. Although the Court may take judicial notice of proceedings in other courts, there is no need to take judicial notice of published court opinions. The parties need only cite the authorities. Lastly, the Court takes judicial notice of the map issued by the Department of the Interior for the purpose of establishing that Defendant ILM is located on the Presidio.

II. Federal Enclave

Article 1, Section 8, Clause 17 of the United States Constitution grants Congress the power to "exercise exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." The power to exercise "exclusive legislation" holds the same meaning "exclusive

4

jurisdiction." Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930). Exclusive jurisdiction "assumes the absence of any interference with the exercise of the functions of the Federal Government and . . . debar[s] the State from exercising any legislative authority, including its taxing and police power, in relation to the property and activities of individuals and corporations within the territory." Silas Mason Co. v. Tax Comm'n of Wash., 302 U.S. 186, 197 (1937).

"Exclusive legislative power is in essence complete sovereignty . . . [and] state laws, not adopted directly or impliedly by the United States, are ineffective to tax or regulate other property or persons upon that enclave." Therefore, the property and activities of individuals within that enclave are under the exclusive jurisdiction of the United States.

In 1897, the California Legislature ceded the Presidio to the United States and exclusive jurisdiction over that area was conferred upon the United States. Standard Oil Co. v. California, 291 U.S. 242, 244 (1934) (holding "it seems plain that by the act of 1897 California surrendered every possible claim of right to exercise legislative authority within the Presidio -- put that area beyond the field of operation of her laws."). The California Act conferring jurisdiction states:

> The State of California hereby cedes to the United States of America exclusive jurisdiction over all lands within this State now held, occupied, or reserved by the government of the United States for military purposes or defense, or which may hereafter be ceded or conveyed to said United States for such purposes . . . .

Cal. Stat. 1897, p. 51.

5

Plaintiff argues that, because the Act included the statement, "for military purposes," jurisdiction ended when the Presidio was no longer used for military purposes. However, nothing in the statute suggests a reservation of state jurisdiction. There is "no indication that either California or the United States intended the language 'for military purposes' to be a condition subsequent that would automatically and immediately transfer jurisdiction from the United States back to California." Swords to Plowshares v. Kemp, 423 F. Supp. 2d 1031, 1036 (N.D. Cal. 2005). The cases Plaintiff relies upon, Crook, Horner & Co. v. Old Point Comfort Hotel Co., 54 F. 604, 611 (E.D. Va. 1893) and Palmer v. Barret, 162 U.S. 399, 404 (1896), are inapposite and distinguishable. In both of those cases, the statutes ceding jurisdiction to the United States contained express provisions stating that jurisdiction would revert back to the state under specified conditions. The California Act ceding jurisdiction contains no such provision. Swords to Plowshares, 423 F. Supp. 2d at 1036 ("California ceded the Presidio to the United States with no specific condition that jurisdiction would remain only as long as the land was used for the purposes for which jurisdiction was ceded.").

Plaintiff also argues that the United States lost exclusive jurisdiction over the Presidio when it conveyed administrative jurisdiction to the Presidio Trust in 1996. The Presidio Trust is a wholly owned federal government corporation. Omnibus Parks and Public Lands Management Act of 1996, Pub. L. No. 104-333, § 103(a) (1996). Although the Presidio Trust enters into commercial leases with private parties on the land, it may not transfer the federal

6

1  government's property rights.  "The Trust may not dispose of or
2  convey fee title to any real property transferred to it under this
3  title."  Id. § 104(b).  The cases Plaintiff relies on are
4  inapposite because they pertain to situations in which the United
5  States sold or transferred the property rights in question.
6  See S.R.A. Inc. v. State of Minnesota, 327 U.S. 558 (1946); United
7  States v. Goings, 504 F.2d 809 (8th Cir. 1974).

8      Although neither the Supreme Court nor the Ninth Circuit has
9  decided a case directly on point, the Supreme Court has held that
10 the United States does not lose exclusive jurisdiction to land
11 within an enclave by leasing it for commercial purposes.  Arlington
12 Hotel Co. v. Fant, 278 U.S. 439, 455 (1929); Humble Pipe Line Co.
13 v. Waggoner, 376 U.S. 369, 372 (1964).  The Court finds these cases
14 persuasive as applied to the instant case.  Therefore, "the United
15 States did not lose exclusive jurisdiction over the Presidio by
16 transferring the administration of the property to the Presidio
17 Trust."  Swords to Plowshares, 423 F. Supp. 2d at 1035.

18     Plaintiff asserts that the federal enclave doctrine does not
19 apply to him because he spent most of his career working in Marin
20 County, not in the Presidio.  In determining whether to apply the
21 federal enclave doctrine, courts look to where the alleged unlawful
22 acts took place.  See, e.g., Taylor v. Lockheed Martin Corp, 78
23 Cal. App. 4th 472, 481 (2000) (rejecting argument that federal
24 enclave doctrine did not apply where plaintiff, who worked on the
25 enclave, was on paid suspension and therefore not on the enclave
26 when terminated); Stiefel v. Bechtel Corp, 497 F. Supp. 2d 1138,
27 1148 (S.D. Cal. 2007) (holding that plaintiff's FEHA claims were

United States District Court
For the Northern District of California

1  subject to the federal enclave doctrine because relevant events
2  occurred on the enclave); Snow v. Bechtel Const. Inc., 647 F. Supp.
3  1514, 1521 (S.D. Cal. 1986) (state law claim for wrongful
4  termination dismissed where relevant events occurred on a federal
5  enclave."). Here, Plaintiff began working on the Presidio in
6  September, 2005. Although he was working in Marin County when he
7  received his first negative performance evaluation, the vast
8  majority of the alleged acts of discrimination took place on the
9  Presidio. He filed several charges with the DFEH and EEOC alleging
10 discrete acts of discrimination concerning a January, 2008
11 performance evaluation, the April, 2008 dismissal and the October,
12 2008 termination. Because Plaintiff's allegations of
13 discrimination pertain to acts that took place on the Presidio, the
14 federal enclave doctrine applies.
15     Plaintiff argues that, even if the Presidio is a federal
16 enclave, state law still applies because the federal and state laws
17 at issue are substantively similar. However, similarities among
18 the federal and state laws that Plaintiff asserts are not on point.
19 Instead, the only state laws that apply on a federal enclave are
20 those that were enacted before the time of cessation, 1897. James
21 Stewart & Co. v. Sadrakula, 309 U.S. 94, 99-100 (1940). Here, none
22 of Plaintiff's state claims arises under statutes enacted before
23 1897.
24     Plaintiff lastly argues that Defendants are estopped from
25 denying the application of state law because they posted throughout
26 the Presidio workplace notifications about California anti-
27 discrimination laws. However, as noted above, only Congress, not a

8

state or an individual employer, may waive application of the federal enclave doctrine and allow state law jurisdiction.

In sum, the federal enclave doctrine bars Plaintiff from bringing his state law causes of action.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss the state law claims (Docket No. 17).  The Court dismisses Plaintiff's first through fourth and sixth causes of action.  These claims are dismissed with prejudice because amendment would be futile.  Defendants must answer the remaining causes of action within twenty-one days from the date of this order.

IT IS SO ORDERED.

Dated: 03/19/10

CLAUDIA WILKEN
United States District Judge

9